**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 13 CR 832 |
| v. | ) | |
| | ) | |
| | ) | |
| WILLIAM THOMAS | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant William Thomas has moved to suppress evidence seized pursuant to the execution of a search warrant in a basement floor apartment. For the reasons discussed below, the Court denies Defendant's motion.

## BACKGROUND

On October 17, 2013, the grand jury returned a three count indictment against Defendant William Thomas. Count One charges Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1). Count Two charges Defendant with knowingly and intentionally possessing heroin with intent to distribute, in violation of 21 U.S.C. 841(a)(1). Count Three charges Defendant Thomas with knowingly possessing a firearm in furtherance of a drug trafficking crime, namely possession with intent to distribute heroin, as charged in Count Two, in violation of 18 U.S.C. 924(c)(1)(A). The indictment also contains a related forfeiture allegation. The charges were based in part on evidence seized from Thomas' apartment on June 4, 2013.[1]

---

[1] Because the Court had to writ Defendant from Cook County Jail to face the charges, he was not arraigned until November 19, 2013. (R. 10.)

## I.     The Search Warrant

On June 3, 2013, Cook County Circuit Judge Sandra G. Ramos issued a search warrant to search "the person of William G. Thomas, AKA 'Burpy' … and the premises of 904 N. Kedvale, basement floor apartment, Chicago, Cook County, Illinois." (R. 39-1, Ex. A.)  Judge Ramos issued the search warrant after finding probable cause based on a Complaint for Search Warrant (the "Complaint") sworn to in her presence by Chicago Police Detective Gregory Jacobson and an individual referred to as "John Doe." (R. 39-1, Ex. B.)  "John Doe," the confidential informant ("CI"), personally appeared before Judge Ramos to present the Complaint, and swore to its contents before her.  In addition, "he was made available for questioning" by Judge Ramos. (*Id.*)  The Complaint also specifically noted that "John Doe's criminal history, including possible pending investigations, if any, has been presented and made available to the undersigned Judge." (*Id.*).

The Complaint disclosed Detective Jacobson's experience, including his prior use of confidential informants in investigations. (*Id.*)  It revealed that on June 1, 2013, a confidential informant referred to as "John Doe" disclosed that he/she had been in Defendant's basement apartment near Kedvale and Iowa[2] with Defendant, known as "Burpy." (*Id.*)  While in the basement, the CI saw a large clothes rack with numerous items of men's clothing. (*Id.*)  While discussing recent gang conflicts in the area of Chicago Avenue and Lorell with Defendant, a member of the Four Corner Hustle street gang, Defendant "retrieved a blue and gray steel, 'baby' 40 caliber semi-automatic handgun and a blue steel 40 caliber semi-automatic handgun from inside of the pockets of clothing that were on the clothing rack inside of the apartment." (*Id.*)

---

[2]  The complaint appears to contain a typographical error on page 3 because it refers to the location as Iowa and Thomas.  There is no such intersection in Chicago.  Instead, 904 North Kedvale is located near the intersection of Iowa Street and Kedvale Avenue.  The location is correctly referred to in another section of the complaint as Iowa and Kedvale.  This mistake does not render the warrant invalid.  *See United States v. Kelly*, __ F.3d __, 2014 WL 6678311, at *4-5 (7th Cir. 2014).

While holding both guns in his hands, Defendant stated, "I am ready for any of those niggas who try and take what's mine." (*Id.*) The CI then saw Defendant place the "blue and gray steel 'baby', 40 caliber semi-automatic handgun and a blue 40 caliber semi-automatic handgun back in [the] clothing that was hanging on the clothing rack." (*Id.*) Detective Jacobson described the steps he had taken to corroborate John Doe's information. (*Id.*)

## II.     Execution of the Search Warrant

On June 4, 2013, the Chicago Police Department ("CPD"), including members of its SWAT team, executed the search warrant on the basement floor apartment at 904 Kedvale, Chicago. During the search, CPD seized a 9mm handgun, a baggie containing approximately 17 grams of heroin, ten rounds of 9mm ammunition, a BB gun pistol, $180 cash, a digital scale, a letter addressed to Mr. Thomas and identification documents reflecting that Defendant lived at that location, and a blue leather jacket. (R. 39-1, Ex. C.); (R. 41, Gov. Resp., at 3.)

During the execution of the search warrant, both Defendant and his girlfriend were present at the apartment. CPD arrested Thomas. Detective Jacobson interviewed Defendant's girlfriend who confirmed that his nickname was "Burpee."

Defendant gave a statement to Detective Jacobson later that morning at the Area North Detective Division. During the statement, Defendant admitted possessing the 9mm pistol found in the leather jacket. He also confirmed that the pistol found near his bed was a BB gun. In addition, Defendant told Detective Jacobson that he was a ranking member of the Four Corner Hustler street gang and had the gun for protection. Defendant explained that he needed to protect himself because he had a $50,000 bounty on his head because rival gang members believed that he had kidnapped one of their associates.

# ANALYSIS

Defendant contends that the issuing judge lacked probable cause to issue the search warrant because the Complaint came from an unidentified informant "of unknown background and unknown reliability", the informant's claims were uncorroborated, and the information was stale. Accordingly, Defendant contends that the Court should suppress the evidence seized during the execution of the search warrant.

## I.    There Was Probable Cause to Issue the Search Warrant

Probable cause to search "is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014) (citing *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The Seventh Circuit teaches that when a search warrant authorizes the search, "deference is owed to the issuing judge's conclusion that there is probable cause." *Sutton*, 742 F.3d at 773 (citing *United States v. Sims,* 551 F.3d 640, 644 (7th Cir. 2008)). *See also United States v. Carroll*, 750 F.3d 700, 703-04 (7th Cir. 2014) ("When a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause."). When addressing a motion to suppress, courts should "defer to the issuing judge's initial probable cause finding if there is 'substantial evidence in the record' that supports [her] decision." *Sutton*, 742 F.3d at 773 (quoting *Sims*, 551 F.3d at 644). Indeed, a "district court does not engage in de novo review of an issuing judge's conclusion that, based on the totality of the circumstances, there was a 'fair probability that contraband or evidence of a crime w[ould] be found in a particular place.'" *United States v. Kelly*, __ F.3d __, 2014 WL 6678311, at *4-5 (7th Cir. 2014) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "Rather, in reviewing the

issuing judge's probable cause determination, the district court need only evaluate whether the judge had a 'substantial basis' for concluding that probable cause existed." *Id.*, at *5. A judge may not, however, "rely solely on conclusory allegations or a bare bones affidavit." *Sutton*, 742 F.3d at 773 (quotations omitted).

When probable cause to search is supported by information provided by a confidential informant, the Seventh Circuit recently reiterated that courts look to several factors to assess the finding of probable cause:

> (1) the degree to which the informant has acquired knowledge of the events through firsthand observation, (2) the amount of detail provided, (3) the extent to which the police have corroborated the informant's statements, and (4) the interval between the date of the events and the police officer's application for the search warrant.

*Sutton*, 742 F.3d at 773 (citing *United States v. Searcy,* 664 F.3d 1119, 1122 (7th Cir. 2011)). Moreover, it is significant if the confidential informant appears in person before the issuing judge and provides his or her own sworn affidavit because such an appearance affords the issuing judge "a greater opportunity to assess credibility." *Sutton*, 742 F.3d at 773 (citing *Sims,* 551 F.3d at 640). Viewing these factors, the record contains substantial evidence to support Judge Ramos' finding of probable cause to search the basement apartment at 904 N. Kedvale and her issuance of the search warrant.

First, the CI was in the basement apartment at of 904 N. Kedvale and personally observed Defendant who resides there. (R. 39-1, Ex. B.) Defendant "retrieved a blue and gray steel, 'baby' 40 caliber semi-automatic handgun and a blue steel 40 caliber semi-automatic handgun" from inside the pockets of certain men's clothing inside the apartment. (*Id.*) He did this on May 23, 2013. (R. 38, Ex. B.) Defendant held both of the handguns in his hands and stated to the CI, "I am ready for any of those niggas who try and take what [is] mine." (R. 39-1, Ex. B.) The CI saw that both handguns had ammunition magazines. (*Id.*) Based on CI's prior experience with

handguns, he represented that the guns were real. (*Id*.) The CI then observed Defendant place the handguns back in clothing that was hanging on the clothing rack in the basement apartment. (*Id*.) The CI personally saw and heard this evidence.

In addition, the sworn Complaint provides details regarding the apartment, Defendant, Defendant's age and physical description, and Defendant's gang affiliation with the Four Corner Hustle street gang. The sworn Complaint provides details regarding the firearms, the location of the firearms, and the ammunition magazines.

Furthermore, contrary to Defendant's assertions, Detective Jacobson details the extent to which CPD corroborated the informant's statements. Specifically, Detective Jacobson ran a query for "Burpy" in the CPD data warehouse system. (*Id*.) He also showed several CPD generated photographs to the CI who positively identified William Thomas as the person the CI knew as "Burpy" and who was in possession of the firearms. (*Id*.) The Detective also ran Defendant's criminal history and determined that Defendant has a felony conviction for Aggravated Vehicular Hijacking. (*Id*.) "Burpee" is also listed as his nickname on at least six of Defendant's CPD arrest reports. (*Id*.) His address of residence on his most recent arrest report was listed as 904 N. Kedvale. (R. 38, Ex. B.) Detective Jacobson also drove the CI to the area of the apartment and the CI identified the address of 904 N. Kedvale, basement floor apartment, as the location where the CI observed Defendant William Thomas, aka Burpy, in possession of the firearms at issue. (R. 39-1, Ex. B.); *see United States v. Sims*, 551 F.3d 640, 642-45 (7th Cir. 2008).

Moreover, only eleven days passed between the date of the events and Detective Jacobson's application for the search warrant. While "there is no bright line for when information is stale," *United States v. Pappas,* 592 F.3d 799, 803 (7th Cir. 2010), the eleven day

period here did not render it stale.  *See United States v. Mitten,* 592 F.3d 767, 775 (7th Cir. 2010); *Forman v. Richmond Police Dept.,* 104 F.3d 950, 962 (7th Cir. 1997).  John Doe observed Defendant inside the apartment just eleven days before Detective Jacobson obtained the search warrant.  At that time, Defendant took two guns out of the pockets of men's clothing and showed them to John Doe.  (R. 39-1, Ex. B.)  Defendant told John Doe that "I am ready for any of those niggas who try and take what's mine," and then he placed the guns back in the clothing on the rack.  (*Id.*)  Consistent with Thomas' own statement to Detective Jacobson, his statements and actions indicated that he intended to keep the firearms for his protection – not dispose of them any time soon.  Given this, the eleven days did not render the information stale.

Finally, John Doe personally appeared before Judge Ramos and swore to the information in the Complaint supporting the search warrant.  While there is no evidence that the judge asked any questions of the CI, it is uncontested that "John Doe's criminal history, including possible pending investigations, if any, has been presented and made available to the undersigned Judge." (R. 39-1, Ex. B.)  Judge Ramos had this important credibility information that enabled her to assess the CI's credibility and make further inquiry, if she thought it necessary.

Defendant's reliance on *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002) is misplaced.  In *Koerth*, the government conceded that the informant's conclusory allegations were insufficient to establish probable cause, especially where the informant did not appear before the issuing judge.  *Id.* at 867.  In contrast, here, Detective Jacobson corroborated John Doe's information and John Doe was presented to Judge Ramos at the time she issued the warrant for her to evaluate his information and ask questions.  Moreover, the Seventh Circuit nonetheless held that the good faith exception applied in *Koerth* and affirmed the district court's denial of the suppression motion.  *Id*. at 871-72.

**II.      The Good Faith Exception Applies**

Even if probable cause to search did not exist here, the good faith exception would preserve the evidence recovered during the execution of the search warrant.  "The good-faith exception provides that the exclusionary rule does not apply where police officers reasonably and in good faith believe that their conduct is lawful, such as reliance on a warrant later found to be invalid."  *United States v. Gutierrez,* 760 F.3d 750, 753 (7th Cir. 2014) (citing *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).  A police officer's decision to obtain a warrant from a judge provides *prima facie* evidence that the officer was acting in good faith.  *Leon,* 468 U.S. at 921, 104 S.Ct. 3405; *United States v. Miller,* 673 F.3d 688, 693 (7th Cir. 2012).  A defendant may rebut this *prima facie* evidence by "demonstrating that (1) the issuing judge abandoned the detached and neutral judicial role; (2) the officer was dishonest or reckless in preparing the affidavit; or (3) the warrant was so lacking in probable cause that the officer could not reasonably rely on the judge's issuance of it."  *United States v. Reed,* 744 F.3d 519, 522 (7th Cir. 2014) (citing *Miller,* 673 F.3d at 688); *United States v. Bell,* 585 F.3d 1045, 1052 (7th Cir. 2009); *United States v. Garcia,* 528 F.3d 481, 487 (7th Cir. 2008).

Because Detective Jacobson obtained a search warrant from Judge Ramos, the government has presented *prima facie* evidence that he was acting in good faith.  Defendant nonetheless contends that the good faith exception should not apply in this case.  He argues that it should not apply because "Detective Jacobson did not include in the complaint any facts pertaining to the reliability or veracity of the CI," and, according to Defendant, the absence of such information demonstrates a disregard for the law and "implies bad faith."  (R. 29 at 11-12.) As discussed above, however, the Complaint specifically provides that the CI's criminal history

and any possible pending investigations were made available to the issuing judge. Defendant

does not present any evidence suggesting otherwise. Accordingly, Defendant's argument fails.

## III. Defendant Is Not Entitled to a Franks Hearing

Finally, Defendant contends that he is entitled to a hearing pursuant to *Franks v.

Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In *Franks*, the Supreme Court

held that intentionally or recklessly submitting false statements in an affidavit submitted in

support of a search warrant violates the Fourth Amendment. The affidavit, however, has a

"presumption of validity." *Id.* at 171. In order to obtain a *Franks* hearing, Defendant must

establish that the affiant knowingly, intentionally, or with reckless disregard for the truth made a

false statement in the affidavit, and that the false statement is necessary to the finding of

probable cause in the context of a search warrant. *Id. See also United States v. Robinson,* 724

F.3d 878, 886 (7th Cir. 2013). A hearing is also warranted if the affiant intentionally or

recklessly *omitted* material information from the affidavit. *United States v. Carmel,* 548 F.3d

571, 577 (7th Cir. 2008). The omitted facts "must be material to the probable cause

determination." *United States v. Norris,* 640 F.3d 295, 302 (7th Cir. 2011) (quotation omitted).

*See also United States v. McDuffy,* 636 F.3d 361, 363 (7th Cir. 2011) ("an omitted detail is

material only if its inclusion would upset a finding of probable cause"). As the Seventh Circuit

has made clear, the "standard is not whether the affidavit contains a false statement, but whether

the affiant knew or should have known that a statement was false." *United States v. Schultz,* 586

F.3d 526, 531 (7th Cir. 2009) (citing *United States v. Jones,* 208 F.3d 603 (7th Cir. 2000)).

The Seventh Circuit has also held that defendants cannot meet the high standard of a

*Franks* hearing by arguing that the police could have done more work on a case. *Johnson,* 580

F.3d at 671 (citing *United States v. Swanson,* 210 F.3d 788, 791 (7th Cir. 2000)). "Even if the

police's failure to corroborate the informant's claims was negligent, 'a little negligence-actually even a lot of negligence-does not the need for a *Franks* hearing make.'" *Id.* Furthermore, "[i]t is relatively difficult for a defendant to make the 'substantial preliminary showing' required under *Franks.*" *United States v. McMurtrey,* 704 F.3d 502, 509 (7th Cir. 2013).

Defendant argues that a *Franks* hearing is required because Detective Jacobson acted in reckless disregard of the truth by failing to provide the issuing judge with "any facts pertaining to the reliability or veracity of the CI." (R. 29, at 11-12.) To the contrary, the Complaint specifically provides that not only was John Doe made available for questioning by Judge Ramos, but his "criminal history, including possible pending investigations, if any" was presented and made available to her. (R. 39-1, Ex. B.) Defendant has not submitted any evidence to challenge this sworn statement. Accordingly, he is not entitled to a *Franks* hearing.

*United States v. Glover*, 755 F.3d 811 (7th Cir. 2014), does not provide otherwise. In *Glover*, the Seventh Circuit reversed the denial of a *Franks* hearing where a confidential informant had provided the underlying information for the search warrant. Significant to the Seventh Circuit's determination was the fact that the affidavit did not provide the issuing judge "with even a minimum of information on credibility that might have triggered further inquiry." *Id.* at 818. Because the issuing judge did not have any information regarding the confidential informant's criminal record, including possible charges at the time of his/her cooperation, the court could not "defer to the under-informed finding of probable cause." *Id.* In contrast, here "John Doe's criminal history, including possible pending investigations, if any, has been presented and made available to the undersigned Judge." (R. 39-1, Ex. B.) Accordingly, Judge Ramos had the "vital credibility information" regarding the confidential information that enabled her to assess his/her credibility and make further inquiry, if necessary. *See United States v.*

*Hawthorne*, No. 13-CR-772, 2014 WL 5461074, at *4 n. 3 (N.D. Ill. Oct. 2, 2014) ("Here, the judge knew that Doe had a criminal history and the existence of any pending investigations. Armed with that information, the judge had a basis to assess Doe's credibility.").

## CONCLUSION

For the reasons discussed above, Defendant's motion to suppress evidence and for a *Franks* hearing is denied.

Dated:  December 29, 2014

_____
AMY J. STEEVE
United States District Court Judge